IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM C. MARTIN,    Plaintiff | : : : | CIVIL ACTION |
| v. | : : | NO. 04-3255 |
| US STEEL and CARNEGIE PENSION FUND,    Defendant | : : : : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                             September        ,2005

Plaintiff seeks a judicial determination entitling him to a 30 year retirement pension and a 100% survivor benefit allocated to his wife.  Plaintiff originally filed his claim in the Court of Common Pleas of Bucks County and Defendant removed to this Court alleging Plaintiff's claims fell within ERISA.  Defendant now moves for Summary Judgment.

**I.      BACKGROUND**

Plaintiff, William C. Martin, is a former employee of the U.S. Steel Corporation (USS).  Martin worked at USS from February 1965 until May 18, 1990, when he ceased working due to illness and was placed on a permanently incapacitated disability pension. The Defendant, U.S. Steel and Carnegie Pension Fund ("Pension Fund"), is both the administrator and fiduciary for the U.S. Steel Corporation Plan for Employee Pension Benefits.

On May 31, 1990, Martin elected to retire under the permanent incapacity retirement provisions of the Pension Agreement.  On January 2, 1997, Martin was

removed by the Pension Fund from the permanently incapacitated disability pension.[1] Following his removal from that pension, Martin unsuccessfully tried to regain employment with USS. Martin claims that USS failed to reinstate him to a suitable position within the Collective Bargaining Agreement.

Sometime in 2003 Martin requested a 30 year pension from the Pension Fund. On September 22, 2003, a Supervisor of Pension Administration for the Pension Fund responded to Martin by denying his request and further alleging that he owed the Pension Fund $7,447.20 in overpayments of the permanent incapacity pension benefits from May through December of 1996. The Pension Fund determined that Martin was not eligible for the 30 year pension plan because his continuous service ended on May 31, 1990, five years short of the 30 year mark.

Martin now claims that he qualifies for and is entitled to a 30 year retirement pension from the Pension Fund and that his pension should be converted over to a plan with a 100% survivor benefit. The Pension Fund contends Martin is only entitled to the lesser, Deferred Vested pension, and that he has waived his right to convert his pension benefits over to a 100% survivor benefit plan.

## II. STANDARD OF REVIEW

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is

---

[1] The legitimacy of that revocation has been established. See Martin v. U.S. Steel & Carnegie Pension Fund, Civ. No. 02-708, 2002 U.S. Dist. Lexis 14001 (E.D. Pa. 2002) (Bartle J.).

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Additionally there is a separate standard for reviewing the denial of ERISA benefits.  "A denial of benefits under an ERISA plan challenged under Section 1132(a)(1)(B)[2] must be reviewed de novo unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Furthermore, and in accordance with Third Circuit law, this Court would use a sliding scale or heightened form of the arbitrary and capricious standard if the Pension Fund both funded and administered the plan.[3]  Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377 (3d Cir. 2000).

---

[2] Although not specifically mentioned in Plaintiff's complaint this case would fall under Sec. 1132(a)(1)(B).

[3] In this case, no financial conflicts of the type considered by the Court in Pinto have been plead by Martin.  Further, according to the "Financial Provisions" of the plan, all contributions to the Pension Fund are made by separate employing companies, and any amount of money paid into the Pension Fund in excess of what is required is credited back to the employing companies.  The Pension Fund alleges, and Martin does not deny, that they do not make a profit or have a financial interest in denying payment of any particular claim.

In this case, because the plan gives the Pension Fund discretionary authority to determine eligibility for benefits under the pension agreement, and because this Court is unaware of any structural financial conflicts of interest, I will review the Pension Fund's decision to deny Martin a 30 year pension under a less than heightened arbitrary and capricious standard.[4]

**III.   DISCUSSION**

There are two separate claims in this case that merit individualized discussions. The first is Martin's claim to the 30 year pension, while the second is Martin's survivor benefit plan.

    A.    <u>Is Martin Entitled to the 30 Year Pension?</u>

In determining Martin's eligibility for the 30 year pension the key issue is whether his retirement in 1990 due to permanent disability created a sufficient break to end his continuous service. The Pension Fund directs this court to the Pension Agreement. "The term 'continuous service' as used in this agreement means service prior to retirement calculated from the Employee's last hiring date..." Sec.5.1. Further, the Pension Fund argues that Martin never returned to work at USS.

Martin's response is four fold: 1) his condition constituted a "compensable occupational disease" and because he continued receiving Worker's Compensation

---

[4] See <u>Stoetzner v. U.S. Steel Corp</u>, 897 F.2d 115, 119 (3d. 1990) ( pre-<u>Pinto</u> ERISA/arbitration case involving the same defendant in which the Third Circuit upheld the District Court's use of an arbitrary and capricious standard of review because the plan gave the administrators discretion in making eligibility determinations).

benefits for that disease his retirement could not have taken place until May of 2003; 2) section 5.1(b)(4) of the Pension agreement provides an exception for this case; 3) USS failed to abide by its Collective Bargaining Agreement by not rehiring Plaintiff; and 4) the time after Martin was removed from the Permanent Disability Pension and before May 13, 2003, should be aggregated as additional service.

Beginning with Martin's first response, that his 1990 retirement should not be considered because he continued to suffer from a compensable occupational disease, he elected to retire in accordance with the plan. Further, Martin's retirement ended his continuous service at USS before any Workers' Compensation claims or findings of compensable occupational disease were made. The status of his injury after he had already ended his continuous service is immaterial.

Secondly, Sec 5.1(b)(4) of the Pension Agreement states "Continuous service shall be broken by:...(4) absence, which continues for more than two years, except that (i) absence in excess of two years due to compensable disability incurred during course of employment shall not break continuous service..." Martin contends this section of the agreement applies because his absence from work, beginning in 1990, was due to a compensable disability. Martin's argument does not mention why his 1990 retirement would not sever his continuous service. Had Martin not retired, this argument may be valid. However, because his continuous service ended at retirement, Martin no longer qualifies for an excused absence provision.

Martin's third response, that USS should have rehired him after the Pension Fund revoked his Permanent Disability Pension, lacks merit by failing to state how or why this claim should be litigated against the Pension Fund.  The Pension Fund's autonomy from USS with regard to employment decisions is uncontested.  Further, this claim was made by Martin against the Pension Fund in a 2002 lawsuit that was barred by the statute of limitations. <u>Martin v. U.S. Steel & Carnegie Pension Fund</u>, Civ. No. 02-708, 2002 U.S. Dist. Lexis 14001 (E.D. Pa. 2002) (Bartle J.).  Regardless of whether USS's reinstatement of Martin would have made him eligible for the 30 year pension, the fact that they did not does not give him redress against the Pension Fund.  The Pension Fund has nothing to do with USS's employment decisions.

Martin's fourth response, that the time after his permanent disability pension was revoked until his formal retirement in 2003 should be added to his previous years of service, appears as a lone statement lacking both legal and factual merit.  Martin fails to cite any provision within the Pension Agreement providing support for this claim.  Further, he is unable to give any legal precedent explaining why this aggregation of service hours should take place.

      B.     <u>Is Plaintiff Entitled to the 100% Survivor Benefit Option?</u>

According to the Pension Agreement there is an Automatic Option which applies to all pensions unless specifically rejected by both the recipient and his spouse within 90 days from when the recipient is first notified of the option.  The Automatic Option provides for a 50% survivor benefit.

In this case Martin failed to revoke the Automatic Option within the 90 day period because he did not want to acquiesce to the Pension Fund's contention that he was not entitled to the 30 year pension. Martin believed that by actively revoking the Automatic Option he would be estopped from challenging the Pension Fund's decision. Martin's brief and evidence fail to show any legal or factual basis for this belief. No estoppel cases are cited and no genuine issue of material fact is posed by Martin's allegation that he believed his claim to a 30 year pension could have been barred by complying with the 100% Survivor Benefits Plan's formalities. Although Martin sent the Pension Fund a letter alluding to his desire to receive the 100% survivor benefit plan, the Pension Fund did not act in an arbitrary and capricious way in following the Plan's formalities and requiring Martin's, and his wife's, signatures revoking the Automatic Option.

**IV.   CONCLUSION**

Based upon Martin's inability to state any legal or factual reason why the Pension Fund has abused its discretion in revoking his claim to the 30 year pension or why he should be excused from complying with the 100% survivor benefit plan's formalities, the Pension Fund's motion for summary judgment is granted for both counts. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM C. MARTIN,** | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 04-3255 |
| | : | |
| **US STEEL and CARNEGIE** | : | |
| **PENSION FUND,** | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, this         day of September, 2005, upon consideration of the Defendant's Motion for Summary Judgment, it is hereby ORDERED that the motion is GRANTED.  This case is dismissed with prejudice.  The Clerk of the Court shall mark this case as closed for all purposes.

BY THE COURT:

_____
LAWRENCE F. STENGEL, J.